UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CARSON CITY, a consolidated municipality and political subdivision of the State of Nevada,<br><br>Plaintiff,<br><br>v.<br><br>THE TRAVELERS INDEMNITY COMPANY, a Connecticut Corporation; ROE COMPANIES I – X; and DOE INDIVIDUALS I – X,<br><br>Defendants. | Case No. 3:22-cv-00006-LRH-CLB<br><br>ORDER |

Before the Court is Plaintiff Carson City's Motion for Summary Judgment. ECF No. 28. Defendant The Travelers Indemnity Company ("Travelers") opposed the motion (ECF No. 31) and Carson City replied to the opposition (ECF No. 32). Also before the Court is Travelers' Motion for Summary Judgment. ECF No. 29. Carson City opposed the motion (ECF No. 30) and Travelers replied to the opposition (ECF No. 33). The Court denies Travelers' requests for oral argument on both motions. For the reasons articulated below, the Court grants Carson City's motion in part and denies Travelers' motion.

**I.      BACKGROUND**

This matter involves a contractual dispute concerning the monetary coverage limits of a Travelers insurance policy purchased by Carson City.

///

1

### A. The Insurance Policy

From July 1, 2015 – July 1, 2016, Carson City was insured pursuant to Travelers liability insurance policy #ZLP-15P27757-15-PA, which it renewed for the period of July 1, 2016 – July 1, 2017, in the form of policy #ZLP-15P27757-16-PA (collectively, the "Policy"). *See* ECF Nos. 28-2, 28-3, 28-4.

The Policy contains a Commercial General Liability Coverage Form (the "CGL") which provides for different types of insurance coverage. ECF No. 28-2 at 51. The first coverage type ("Coverage A") provides that Travelers "will pay those sums that [Carson City] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id*. Coverage A insurance "applies to 'bodily injury' and 'property damage' only if: (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' [. . .] during the policy period[.]" *Id*. The CGL defines the following terms: a "bodily injury" is a "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time"; an "[o]ccurrence" is an "accident, including continuous or repeated exposure to substantially the same general harmful conditions"; and the "[c]overage territory" is the "United States of America" as well as other irrelevant geographic locations. *Id*. at 62, 64.

The second type of CGL coverage ("Coverage B") provides that Travelers "will pay those sums that [Carson City] becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." *Id*. at 55. Coverage B insurance "applies to 'personal and advertising injury' caused by an offense arising out of [Carson City's] business but only if the offense was committed in the 'coverage territory' during the policy period." *Id*. Amongst other things, the CGL defines "personal and advertising injury" as an "injury, including consequential 'bodily injury', arising out of" multiple possible offenses. *Id*. at 64. According to the Policy, "coverage territory" is defined the same in Coverage B as in Coverage A. *Id*. at 62.

The CGL fixes its monetary coverage limits as follows: the General Aggregate Limit (other than Products-Completed Operations) is $2,000,000; the Products-Completed Operations

Aggregate Limit is $2,000,000; the Personal & Advertising Injury Limit is $1,000,000; and Each Occurrence Limit is $1,000,000. *Id*. at 40.

In addition to CGL coverage, Carson City purchased a Limited Abuse or Molestation Liability Coverage endorsement (the "LAM") that amends and modifies the CGL. *Id*. at 71. The first two provisions of the LAM expressly exclude "'[b]odily injury' arising out of any act of 'abuse or molestation'" from Coverage A of the CGL, and "'[p]ersonal injury' arising out of any act of 'abuse or molestation'" from Coverage B of the CGL. *Id*. The LAM provides that Travelers "will pay those sums that [Carson City] becomes legally obligated to pay as damages because of 'bodily injury' or 'personal injury' to which this insurance applies" and declares that the insurance applies to "'bodily injury' or personal injury' caused by an 'abuse or molestation offense' arising out of [Carson City's] business . . ." *Id*. The LAM also provides the following term definitions:

'Abuse or molestation' means any illegal or offensive physical act or contact committed by any 'perpetrator' against any person who is:

    a. Under 18 years of age;

    b. Legally incompetent; or

    c. In the care, custody or control of any insured and is physically or mentally incapable of consenting to such physical act or contact.

'Abuse or molestation offense' means a single act of 'abuse or molestation', or multiple, continuous, sporadic or related acts of 'abuse or molestation'[. . .]

All such acts of 'abuse or molestation' will be deemed to be one 'abuse or molestation offense', regardless of the number of:

    a. Insureds;

    b. Claims made or 'suits' brought; or

    c. Persons or organizations making claims or bringing 'suits'.

'Perpetrator' means any of the following persons who actually or allegedly commit any illegal or offensive physical act or contact:

    a. Persons listed under Paragraph **1**. Of Section **II** – Who Is An Insured;

    b. [Carson City's] 'employees' or 'volunteer workers'. *Id*. at 74.

The LAM further provides the following language with regard to the "LIMITS of INSURANCE" set forth in Section III of the CGL:

> The Abuse Or Molestation Aggregate Limit shown in the Schedule Of Abuse Or Molestation Limits is the most we will pay for the sum of all damages under Coverage – **Abuse Or Molestation Liability**. <u>This limit is in addition to, and not included within, the General Aggregate Limit set forth in Paragraph **2**. of Section **III** – Limits of Insurance.</u>
>
> Subject to the Abuse Or Molestation Aggregate Limit, the Each Abuse Or Molestation Offense Limit shown in the Schedule Of Abuse Or Molestation Limits is the most we will pay under Coverage – **Abuse Or Molestation Liability** for the sum of all damages because of 'bodily injury' and 'personal injury' arising out of any one 'abuse or molestation offense'. <u>This limit is in addition to, and not included within, the Each Occurrence Limit set forth in Paragraph **5**. of Section **III** – Limits Of Insurance and the Personal and Advertising Injury Limit set forth in Paragraph **4**. of Section **III** – Limits Of Insurance.</u> *Id*. at 73 (emphasis supplied).

The Schedule Of Abuse Or Molestation Offense Limits in the LAM fixes the following monetary coverage limits under the LAM endorsement: the Abuse or Molestation Aggregate Limit is $2,000,000; and the Each Abuse Or Molestation Offense Limit is $1,000,000. *Id*. at 71.

## B. Camp Carson and the Insurance Coverage Dispute

In the summer of 2016, a fifteen-year-old volunteer camp counselor at Camp Carson—an eight-week summer program hosted by Carson City Parks and Recreation—allegedly molested five minors. ECF No. 1-2 at 22. In the fall of 2018, two separate lawsuits were filed in District Court for the District of Nevada against Carson City by the guardians of four of the affected minor children. *Id*. at 20. The first complaint *Jane Doe, a minor, by and through her nature parent, Grace Doe v. Carson City, a consolidated municipality and a political subdivision of the State of Nevada, et al*., Case No. 3:18-cv-00428-LRH-WGC ("DOE I Case"), was filed September 27, 2018, on behalf of one affected minor.[1] *Id*. The second complaint *John and Jane Doe I, Guardians Ad Litem for JoAnn Doe I, a minor, individually; John and Jane Doe II, Guardians Ad Litem for JoAnn Doe II, a minor, individually; and Jane Doe III, Guardian Ad Litem for JoAnn Doe III, a minor, individually, v. Carson City, a political subdivision of the State of Nevada; et al*., Case No. 3:18-cv-00538-LRH-WGC ("DOE II Case"), was filed November 9, 2018, on behalf of three affected minors.[2] *Id*. In addition to the two filed complaints, Carson City received a Demand Letter dated

---

[1] The DOE I Case First Amended Complaint asserted four causes of actions against Carson City: (1) Violation of 4th and 14th Amendment Rights Under 42 U.S.C. § 1983; (2) Negligent Hiring; (3) Negligent Training, Supervision, and Retention; and (4) 20 U.S.C. § 1681. *et seq*., Deliberate Indifference to Sexual Harassment. ECF No. 1-2 at 22.

[2] The DOE II Case Complaint asserted seven causes of action against Carson City: (1) Violation of 20 U.S.C. § 1681. *et seq*.; (2) Negligence; (3) Negligent Hiring, Retention, and Supervision; (4) Duty to Warn; (5) Negligent Infliction of Emotional Distress; (6) Intentional Infliction of Emotional Distress; and (7) Vicarious Liability. ECF No. 1-2 at 22.

June 26, 2020, on behalf of the fifth affected minor in which claims were identified but no formal complaint was filed ("DOE III Demand").[3] *Id.* at 22.

As to DOE I Case and DOE II Case, Carson City tendered defense to Travelers as its insurer and Travelers accepted. *Id.* at 24. Mediation for the two cases took place on November 8, 2019. *Id.* Prior to mediation, Travelers informed Carson City that under its interpretation of the Policy only $1,000,000 in total coverage was available to settle the two cases. *Id.* Carson City informed Travelers that it interpreted the Policy to require at least $2,000,000 in total coverage—$1,000,000 under the CGL and $1,000,000 under the LAM. *Id.* The DOE I Case settled for $1,250,000, while the DOE II Case settled for $255,000. *Id.* at 24, 26. Travelers paid its asserted limit of $1,000,000 which required Carson City to pay the remaining $505,000 settlement balance out-of-pocket. *Id.* at 26.

As to the DOE III Demand, mediation took place on October 2, 2020. *Id.* at 28. The DOE III Demand settled for $125,000 with an additional $2,635 to be paid by Carson City in mediation fees. *Id.* Because Travelers exhausted what it asserted to be its Policy limit in the previous settlements, Carson City was required to pay the total $127,635 DOE III Demand settlement out-of-pocket. *Id.*

On November 17, 2021, Carson City filed its Complaint against Travelers for breach of contract and breach of the implied covenant of good faith and fair dealing, in the First Judicial District Court for the State of Nevada in and for Carson City. *Id.* at 8. On January 1, 2022, Travelers removed the matter based on diversity of citizenship under 28 U.S.C. §§ 1332(a), 1441(a) and 1446. ECF No. 1 at 1. In the Complaint, Carson City alleges that Travelers breached the Policy when it failed to provide $2,000,000 in coverage to settle the pertinent claims and demands. ECF No. 1-2 at 32. At the close of discovery both Carson City and Travelers filed cross motions for summary judgment. ECF Nos. 28, 29. The parties' motions are addressed together below.

///

///

---

[3] The DOE III Demand identified four causes of action to be asserted against Carson City: (1) Violation of the 4th and 14th Amendment Rights Under 42 U.S.C. § 1983; (2) Negligent Hiring; (3) Negligent Training, Supervision, and Retention; and (4) 20 U.S.C. § 1681. *et seq.*, Deliberate Indifference to Sexual Harassment. ECF No. 1-2 at 22.

5

## II. LEGAL STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence and all reasonably drawn inferences must be read in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party "bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 987, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). On those issues for which it bears the burden of proof, the moving party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.*

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which show a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *See id.* at 252.

## III. DISCUSSION

As a preliminary matter, Carson City and Travelers agree that there are no genuine issues of material fact here. ECF No. 28 at 1; ECF No. 29 at 3. Rather, the parties allege that only a legal issue is before the Court in the form of contract interpretation. *See id*. The Court agrees. "Under

Nevada contract theory, '[t]he question of the interpretation of a contract when the facts are not in dispute is a question of law.'" *Lewis v. State of Nevada*, Case No. 2-07-CV-01109-KJD, 2010 WL 3860642, at *3 (D. Nev. Sept. 28, 2010) (quoting *Grand Hotel Gift Shop v. Granite St. Ins.*, 839 P.2d 599, 602 (Nev.1992)). Accordingly, the Court must apply substantive Nevada law to resolve this legal question and interpret the Policy. *See Polymer Plastics Corp. v. Hartford Cas. Ins. Co.*, 389 F. App'x 703, 705 (9th Cir. 2010).

### A.   Carson City and Travelers' Motions for Summary Judgment

In its motion, Carson City argues that summary judgment is appropriate on its breach of contract claim because the Policy unambiguously provides $2,000,000 in coverage and Travelers only paid $1,000,000. ECF No. 28 at 2. More specifically, Carson City alleges that where an "abuse or molestation offense" resulted from negligent hiring, retention, or supervision, "$1 million in coverage for the negligent hiring, retention, and/or supervision is triggered as an 'occurrence'" under the CGL in addition to $1,000,000 in coverage for the actual "abuse and molestation offense" under the LAM. *Id*. at 11, 13. Alternatively, Carson City alleges that the Policy is ambiguous and Nevada law requires ambiguities to be construed in favor of the insured. *Id*. at 14. Carson City alleges that the "in addition to, and not included within" language found in paragraph 6 of the LAM ("Limits of Insurance") created a reasonable expectation that Carson City would be entitled to an additional $1,000,000 in coverage for claims arising out of alleged abuse and molestation and claims arising out of an alleged negligent occurrence. *Id*. 15–16.

In opposition, Travelers argues that Carson City is not entitled to the "occurrence" CGL coverage and the "abuse and molestation offense" LAM coverage because an act of abuse or molestation underlies both claims here. ECF No. 31 at 2. Travelers alleges that the LAM expressly modifies the Policy by (1) adding a new insuring agreement and monetary coverage limits to the Policy for claims of "bodily injury" caused by an "abuse or molestation offense," and (2) excluding claims of "bodily injury arising out of any act of 'abuse or molestation'" from CGL coverage. *Id*. In sum, Travelers argues that Carson City's interpretation of the Policy ignores that "**but for** the abuse and molestation each underlying claimant alleges [they experienced], there would be no negligent supervision or other negligence claims to assert against Carson City." *Id*. at 4. In

opposition to Carson City's alternative argument, Travelers alleges that the insured's reasonable expectations are only considered when a contract is ambiguous, and that the Policy is unambiguous here. *Id*. at 6.

As to its breach of the implied covenant of good faith and fair dealing claim, Carson City argues that the spirit of the LAM agreement was to provide more coverage for the insured and that Travelers deliberately skirted that intention by interpreting the Policy to provide only $1,000,000 in total coverage. ECF No. 28 at 16–17. In opposition, Travelers contends that it did not breach the implied covenant because it fulfilled its duties under the LAM endorsement, the insurance type triggered here. ECF No. 31 at 8.

In its motion for summary judgment, Travelers argues that the Policy unambiguously states any damages incurred by Carson City as a result of bodily injury arising out of an abuse or molestation offense is controlled and limited by the LAM. ECF No. 29 at 3. Travelers alleges that all claims brought against Carson City stem from the bodily injuries that resulted from the alleged abuse and molestation offense. *Id*. at 9, 11. In opposition, Carson City reiterates its argument that it is entitled to $2,000,000 worth of coverage under these facts—$1,000,000 from the LAM and $1,000,000 from the CGL. ECF No. 30 at 2. Carson City argues that Travelers' Policy interpretation is unreasonable because in purchasing the LAM endorsement, Travelers' interpretation would mean that Carson City effectively eliminated and lost the exact coverage it already enjoyed under the CGL. *Id*. at 4. In reply, Travelers argues that just because the parties disagree as to Policy interpretation under these facts does not mean that the Policy is ambiguous. ECF No. 33 at 2. Travelers further alleges that ambiguity arises only when there is more than one reasonable interpretation of an insurance policy which is not the case here. *Id*. at 2– 4.

In Nevada, "the plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *See Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)); *see also Porter v. Chetal*, Case No. 3:13-CV-00661-LRH, 2015 WL 430241, at *3 (D. Nev. Feb. 3, 2015). Here, a valid contract existed between Carson City and Travelers. Carson City purchased the Policy from Travelers in exchange for liability coverage.

Moreover, there is no dispute that Carson City suffered damages as it paid approximately $632,635 out-of-pocket to cover the remaining settlement balances after Travelers exhausted what it asserted to be the Policy's $1,000,000 limit. The remaining question is one of breach.

Generally, "contracts will be construed from the written language and enforced as written" absent some countervailing reason. *Ellison v. C.S.A.A.*, 106 Nev. 601, 603 (1990) (citation omitted). In other words, clear contract language should be enforced exactly how it is written. *Lewis*, 2010 WL 3860642, at *3 (citing *Canafora v. Coast Hotels & Casinos*, Inc., 1221 P.3d 599, 603 (Nev. 2005)). When dealing with ambiguous contracts, courts are guided by different interpretive rules. *See Montana Ref. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 918 F. Supp. 1395, 1397–98 (D. Nev. 1996).

An ambiguous insurance policy is one that is "susceptible to more than one *reasonable* interpretation; otherwise, it is not ambiguous." *Id.* Here, the Court finds that the Policy is ambiguous because its language is susceptible to more than one reasonable interpretation. The Policy provides CGL coverage for bodily and personal injuries that arise out of an "occurrence" and LAM coverage for bodily and personal injuries that arise out of an "abuse and molestation offense." ECF No. 28-2 at 51, 71. The Policy also contains the following language in attempt to explain how LAM coverage interacts with CGL coverage: "[The LAM] limit is in addition to, and not included within, the General Aggregate Limit set forth in [the CGL.]" ECF No. 28-2 at 73.

The Policy is ambiguous because its language is susceptible to more than one reasonable interpretation. The ambiguity is found in the interactional language which attempts to explain how the LAM and CGL operate. Specifically, the "in addition to, and not included within," language can reasonably be interpreted to support Carson City's broader position that the LAM coverage is "in addition to, and not included within" the CGL coverage. Otherwise stated, this language could reasonably mean that both coverages are available to the insured which mirrors Carson City's reasonable expectation in purchasing the LAM endorsement. Alternatively, this language could support Travelers' narrower, but reasonable, interpretation that negligence claims arising out of abuse or molestation were excluded from the CGL coverage when the LAM coverage was

acquired. Here, the Court finds that the Policy is ambiguous; both Carson City and Travelers argue reasonable Policy interpretations.

Travelers argues that the LAM's exclusionary provisions clear up any ambiguity as to how the LAM and CGL operate. When an insurer wants to restrict coverage, "language which clearly and distinctly communicates to the insured the nature of the limitation" is required. *Montana Ref.*, 918 F. Supp. at 1398. At the same time, courts must look at an entire contract to understand what risks are assumed by the insurer and what risks are excluded. *Id*. at 1397. Here, the entire contract does not make distinctly clear how the LAM and CGL operate. When the exclusionary provisions are paired with the interactional "in addition to" language, more than one reasonable interpretation of the Policy exists.

In the insurance context, ambiguous policies "should be construed to effectuate the reasonable expectations of the insured." *Nat'l Union Fire Ins. Co. v. Ceasars Palace Hotel & Casino*, 106 Nev. 330, 332–33 (1990) (citing *National Union Fire Ins. v. Reno's Exec. Air*, 100 Nev. 360, 365 (1984)). Moreover, insurance contract ambiguities in Nevada are "construed against the insurer and in favor of the insured." *Serrett v. Kimber*, 110 Nev. 486, 489 (1994). The Court finds that the ambiguous insurance policy must be interpreted in a manner that effectuates Carson City's reasonable expectations as the insured. In purchasing the LAM endorsement, Carson City reasonably believed it had procured additional coverage above and beyond the $1,000,000 limit afforded by the CGL's Each Occurrence limit for abuse and molestation-related damages. Carson City's reasonable expectation is supported by the Nevada Supreme Court case of *Washoe Cnty. v. Transcon. Ins. Co.*, 110 Nev. 798 (1994). In *Transcon.*, the Nevada Supreme Court held that the county's alleged negligence in licensing and monitoring a day-care center, which resulted in numerous acts of child molestation at the hands of a day-care employee, was the single "occurrence" for purposes of a general insurance policy limit, not the individual or collective acts of molestation. *Id*. at 801. Because the county's liability was at issue in the case, "the cause of the molestations [needed] to be considered with an eye towards the [c]ounty's involvement, not towards [the perpetrator's] involvement." *Id*. at 802, 805.

///

In *Transcon.*, the issue was whether the occurrence-based policy was triggered by the county's negligence or the perpetrator's abuse and molestation. *Id.* at 801. Here, the CGL is triggered by Carson City's alleged negligent "occurrence" while the LAM is triggered by the actual "abuse or molestation offense." Because both "occurrence" and "abuse or molestation offense" coverages were purchased by Carson City, and because both an "occurrence" and an "abuse or molestation offense" are present, the issue the Nevada Supreme Court resolved in *Transcon.* is moot. After *Transcon.*, if an entity wants insurance coverage for both a potential negligent "occurrence" and a potential "abuse or molestation offense," the entity would need to purchase an additional abuse or molestation endorsement. This is exactly what Carson City did. Carson City purchased the LAM endorsement to secure abuse and molestation coverage that was in addition to, and not included within, the CGL. Because the Policy language is ambiguous, Carson City's reasonable expectations must shape the Court's interpretation. The Court finds that ambiguities in the Policy must be interpreted in favor of Carson City as the insured.

All contracts in Nevada impose the duty of good faith and fair dealing upon the insurer and insured. *Polymer Plastics Corp. v. Hartford Cas. Ins. Co.*, 389 F. App'x 703, 706 (9th Cir. 2010) (citing *Wohlers v. Bartgis*, 114 Nev. 1249, 1258 (1998)). "In the insurance context, [b]ad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Id.* (quotation omitted). If the interpretation of the contract maintained by the insurer is reasonable, "there can be no basis for concluding that the insurance company acted in bad faith." *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 102 Nev. 601, 729 P.2d 1352, 1354–55 (1986). Here, the Court has found that both Travelers' and Carson City's interpretations of the Policy are reasonable. Because Travelers' interpretation was reasonable, its conduct of paying what it asserted to be the Policy limit under these facts was also reasonable. Accordingly, the Court finds that Travelers did not act in bad faith.

For these reasons, the Court finds that Travelers breached the Policy when it failed to make $2,000,000 available in coverage limits to Carson City. The ambiguous Policy must be interpreted in favor of Carson City as the insured and it must also be interpreted to effectuate Carson City's reasonable expectations. Here, this means that $1,000,000 in coverage must be available to Carson

City under the CGL's "Each Occurrence Limit" for the "occurrence" of Carson City's alleged negligent acts and $1,000,000 must be available under the LAM's "Each Abuse Or Molestation Offense Limit" for the alleged "abuse and molestation offense[s]." While the Court finds that Travelers breached the Policy, it also finds that Travelers did not breach the implied duty of good faith and fair dealing because it interpreted and acted on the Policy in a reasonable manner.

Accordingly, Carson City's motion for summary judgment is granted as to its breach of contract claim and denied as to its breach of the implied duty of good faith and fair dealing claim. Moreover, Travelers' motion for summary judgment is denied.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Carson City's Motion for Summary Judgment (ECF No. 28) is **GRANTED in part** and **DENIED in part** in accordance with this Order.

IT IS FURTHER ORDERED that Travelers' Motion for Summary Judgment (ECF No. 29) is **DENIED**.

The Clerk is directed to enter judgment for Carson City in accordance with this Order and close this Case.

IT IS SO ORDERED.

DATED this 19th day of April, 2023.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE